Rockingham,
May 7, 1935.

SUSIE E. BOYLE, *Ap't.*

*v.*

ALBERTUS T. DUDLEY, *Adm'r.*

*William H. Sleeper* (by brief and orally), for the plaintiff.

*Arthur E. Sewall, Perley Gardner* and *Oscar Neukom* (*Mr. Sewall* orally), for the defendant.

PAGE, J.    Mrs. Boyle and Mrs. Tasker had been close friends for many years prior to the death of the latter in 1931.    Both women were well advanced in years.    Neither had any relative having a particular claim on her, except that Mrs. Boyle had a husband living in the state hospital until 1934.    From time to time, during the period the two women were intimate, Mrs. Boyle helped Mrs. Tasker, whose right arm was of little use, to do her sewing, preserving and other housework.    She nursed her in one or more short illnesses, and on one occasion helped her move her effects from one house to another. She never lived with Mrs. Tasker and never devoted all her time to her except for a few brief periods.    During the last five months of Mrs. Tasker's life, the plaintiff claims to have performed no services for her, and there was possibly another period of some months, within six years of Mrs. Tasker's death, during which the plaintiff did nothing for her.

Under the first count the plaintiff relies upon a contract to make mutual wills.    The facts that no mutual wills were produced at the trial and that no witness claimed to have seen either, do not alone dispose of the question whether the defendant was entitled to a nonsuit.    Whether or not wills were made, the real inquiry under the first count is whether there was a valid contract to make them irrevocably; while under the second count it is whether the deceased made a valid contract that the plaintiff should have all of her property if the plaintiff survived her.    If such a contract were made, the assets in the hands of the defendant would be impressed with a trust

in favor of the plaintiff. Although mutual wills are in fact made and one of the testators dies, having revoked his will, the survivor may subject the assets of the deceased to a trust in accordance with the revoked will only when it clearly appears that the mutual wills were the product of an irrevocable contract entered into by the makers. The rights of the parties depend upon the contract, and not upon the wills.

The evidence required to establish such a contract has been described variously, but with essential uniformity. "The proofs must be clear and convincing. The contract may be found in an express promise, or inferred, as a conclusion of fact, from the circumstances surrounding the parties." *Tooker* v. *Vreeland*, 92 N. J. Eq. 340, 343, cited in *Knox* v. *Perkins*, 86 N. H. 66, 71. "To attribute to a will the quality of irrevocability demands the most indisputable evidence of the agreement, which is relied upon to change its ambulatory nature, and presumptions will not and should not, in such cases, take the place of proof." *Rolls* v. *Allen*, 204 Cal. 604, 608.

The evidence regarding a contract in the case at bar is limited to declarations made by the deceased to four witnesses. In substance these were: (1) that she and the plaintiff had a mutual arrangement that the one who lived longest should have the other's property; (2) an unexecuted intention that what she had she would leave to the plaintiff, and what Mrs. Boyle had she would leave to her, "and so one of them would be taken care of,—one would take care of the other ... that is, one would take care of the other while they were alive"; (3) that her will was made; "I am to look out for Susie as Susie is to look out for me if I am sick. I am to have what she has and ... she is to have what I have"; that they had an agreement, that Mrs. Boyle had left everything to her, and ... "I have left everything to her"; (4) "We have made our wills and I have given all that I have to Susie and Susie has given all she has to me."

The first and fourth declarations do not furnish clear evidence of a contract to make irrevocable mutual wills, though the fourth is evidence that such wills were made. The second and third declarations taken together might warrant the finding of a contract, in consideration of mutual care during their lives, that they would make irrevocable mutual wills, and the further finding that such wills were actually made as agreed. Whether or not they were later revoked, and the contract rescinded by mutual consent would be another question.

The issue as to a contract under the first count should have been submitted to the jury with proper instructions that they could not

find for the plaintiff if the understanding was merely one of mutual desire and affection; that such a finding could be reached only if the parties intended and undertook to bind themselves and their estates irrevocably by agreeing upon a final disposition of their properties. *Knox* v. *Perkins*, 86 N. H. 66; *Tooker* v. *Vreeland*, 92 N. J. Eq. 340; *Edson* v. *Parsons*, 155 N. Y. 555, 564, 565, 567. There should also have been instructions regarding the application of the statute of frauds in accordance with the principles later to be set forth.

There was no evidence warranting the submission to the jury of issues under the second count; the evidence pointed to a contract to make mutual wills and not merely to a contract by Mrs. Tasker to leave everything to Mrs. Boyle as payment for services.

The application of the statute of frauds to such a parol contract as is set up in the first count is in some respects a matter of dispute. P. L., c. 327, s. 2 prohibits the bringing of actions upon a contract that is not to be performed within one year. But since the promisor may die within a year leaving the contract fully performed, it is not within that clause. Page, Wills, s. 94, n. 6; *Davis* v. *Grimes, ante,* 133.

It is held, almost universally, that an agreement to devise real property is a contract for the sale of real estate, within the statute unless removed from its operation by part performance. When the alleged agreement was made, Mrs. Tasker's property was principally real estate; when she died it was wholly personal. Since the application of the statute depends upon the nature of the property at the time fixed for performance (*Turnipseed* v. *Sirrine*, 57 S. C. 559, 576), the question before us is whether the statute applies to agreements to bequeath personalty.

The cases have shown a marked tendency to assume that while the statute applies to a contract to will real estate, it does not apply to one to will personalty. Why the former should be regarded as a "contract for the sale of land," while the latter should be deemed not to be "a contract to sell . . . goods or choses in action" (P. L., c. 166, s. 4 1), is difficult to perceive upon principle. Yet that assumption has been expressed by way of *dictum* again and again, and has been made the turning-point of a few decisions.

This view was stated in *Clements* v. *Marston*, 52 N. H. 31, 39, which was cited with approval in *Day* v. *Washburn*, 76 N. H. 203, 205. In neither case was the point reasoned or supported by other authority. The point was *dictum* in the *Clements* case, where the plaintiff made no claim whatever to recover upon the contract to make the will. The decisive question was whether the defendant had broken a

promise to put the contract for a will into writing so as to excuse performance by the plaintiff and enable the latter to recover for services actually performed, or whether the plaintiff's own abandonment of the contract precluded him from any recovery for his services. The oral contract for a will included real estate as part compensation for the services proposed. Since that part of the contract to will was invalid because within the statute of frauds, a breach of a promise to reduce the contract to writing would excuse the plaintiff from the rendering of further services, and it would make no difference whether the part of the defendant's promise having to do with personalty was or was not within the statute of frauds. This situation was recognized by the court.

The case of *Day* v. *Washburn, supra,* in so far as it declares the same point as the *Clements* case also is to be regarded as *dictum,* for the trial court found that the written contract and the will executed at the same time were "the method by which the parties undertook to preserve or reduce to writing their [one] contract, and that the two papers . . . express the real contract made by the parties" (282 Briefs and Cases, 60, 61).

In Massachusetts the cases are peculiarly lacking in authority, though frequently cited. It was hinted in *Gould* v. *Mansfield,* 103 Mass. 408, that a contract to will personalty might not be within the statute, but, since the contract had reference to real estate also, and was not divisible, the statute was a complete bar. Again there was no reasoning or citation of authority with regard to that portion of the contract having to do with personalty, and that point was not decided. In the case of *Wellington* v. *Apthorp,* 145 Mass. 69, it was decided that a contract to will money was not within the one-year clause. The contract being to leave a specified sum in money, there was no occasion to discuss or decide the question whether a contract to bequeath personalty in general was a contract for sale. The question is now moot in Massachusetts, for immediately after the decision in *Wellington* v. *Apthorp,* the legislature passed an act requiring that all agreements to will real or personal property be in writing.

The point that a contract to will personalty is not within the statute is distinctly declared in *Hull* v. *Thoms,* 82 Conn. 647, and is implied in other cases. In none of these cases is there any discussion of principles, and none found cites any decision of the point based upon reasoning.

On the other hand stands the *dictum* in *Gernhert* v. *Straeffer's Executor,* 172 Ky. 823, where the property consisted of real estate when

the contract was made and of personal property when the time for performance arrived. It is not clear whether the court thought it a contract to sell real estate or personalty. In *Whiton* v. *Whiton*, 76 Ill. App. 553; 179 Ill. 32; 79 Ill. App. 99, a contract to will personalty was held not to be barred by the statute because (1) the consideration had been fully paid, and (2) the conditions of the contract were recited in a will that was revoked before death. There was no reasoning, but the implication is that the statute would have been a bar except for the reasons stated.

But the cases where the question has been decided on reason seem to be unanimous in holding that a parol contract to will personal property (other than a specific sum of money) is within the statute unless there has been payment of the consideration or the value of the property involved is less than the amount named in the sales-of-goods clause. *Turnipseed* v. *Sirrine*, 57 S. C. 559; *Wallace* v. *Long*, 105 Ind. 522; *Hamilton* v. *Thirston*, 93 Md. 213.

These three cases proceed squarely on the principle that such a contract is an agreement to transfer goods at death in consideration of the performance of services or payment otherwise. As a matter of policy they treat such contracts with as much judicial disfavor as the law permits. The *Hamilton* case (at *p.* 218) applies the "most stringent doctrines . . . as a protection against speculating arrangements sought to be enforced as contracts after one of the parties is no longer here to explain the conduct imputed to him and defend himself against charges of bad faith or fraud." The *Wallace* case declares (at *p.* 531): "It must, we think, be conceded that every provision of the statute of frauds exerts its influence upon contracts, such as we are here considering, to the same extent and with the same potency as upon other contracts for the sale and transfer of property, and if there is one class of cases more than another in which 'a tight rein should be held,' and the statute rigorously applied, it is that class in which. it is proposed by parol to intercept from rightful heirs the transmission of estates."

The executor, as the decedent's "representative," is largely his legal ghost. Whether the testator contracts that he will transfer some property or whether he contracts that his executor will do so, comes to the same thing, and in the latter alternative whether he contracts that he will impose the obligation on the executor by means of a will or without such means is not of consequence, except that if it is by will the claimant is a deferred creditor.

There is a difference between the old statute of frauds and the new

one in that the latter alone applies specifically to *choses in action*. If a contract to make a will of personalty contained no requirement that tangible personalty be delivered to the promisee, it might be argued that the old statute would not apply. If the promisee's only right were to receive money or other intangibles, the executor having the right to turn the tangibles, if any, into money, it might take the new statute to require a writing. The present case arises under the new statute, and thus the reasons for requiring a writing are reinforced.

We find nothing in our prior decisions precluding the conclusion that a contract to will personalty of a greater value than $500 must be in writing unless there has been such payment as removes the case from the provisions of the uniform sales act.

The amount involved exceeds $500, and there was no written memorandum, consequently the contract is within the statute of frauds unless the plaintiff has so performed her part as to satisfy the requisite of part payment demanded by P. L., c. 166, s. 4. The mere making of a will by the plaintiff, if conceded, would not be such part payment. If it be proper ever to apply the theory advanced in *Turnipseed* v. *Sirrine, supra*, at *p*. 576, that the making of mutual wills alone takes a case out of the statute where the survivor is the older, for the reason that the survivor gave the deceased the benefit of the risk of insurance, the reason is lacking in the case at bar, since the benefit of the risk was the other way; Mrs. Boyle had a living husband in whose behalf her will might have been made largely, if not wholly, nugatory. In addition to the promise to make, and not revoke, a will in favor of the deceased, it might be found that the plaintiff promised also to perform certain services all in consideration of the promise of the deceased to make and not to revoke a reciprocal will. It might also be found that the plaintiff performed on her part. Such findings would take the contract out of the operation of the statute of frauds.

A failure of performance by the plaintiff, in order to bar her, must lie in her neglect to perform some of the services promised by her. Her survivorship of Mrs. Tasker terminated her obligation to make a will and leaves that phase of performance unimportant. But if she did not perform all of the services agreed upon, she may not recover under the first count, for then the breach would be hers. If there were a contract as claimed under the first count and the plaintiff broke any of her own promises to perform services, she may not recover upon a *quantum meruit*, for the contract was not one to pay for her services in money. *Roundy* v. *Thatcher*, 49 N. H. 526.

It follows that there can be no recovery under the third count if there was a contract to make mutual wills. Only in case there was no such contract can there be a recovery of the fair value of the services performed. Such a right would be entirely disassociated from the alleged contract to make a will. This must be borne in mind in considering the exceptions raised in connection with the third count.

There was evidence of the performance of services by the plaintiff at the request of the deceased. The denial of the motion for a nonsuit upon the third count was therefore proper. The law of the trial included a ruling that there was no evidence of a contract to make a will. Even if the case had been submitted on the first count as well as the third, it would have been prejudicial for the jury to consider in connection with the third count the evidence of a contract to make a will, for the plaintiff could not recover under the third count unless there was no such contract.

Nevertheless counsel for the plaintiff repeatedly argued, subject to exception, that Mrs. Tasker had agreed to give all she had to the plaintiff in return for the latter's services, that she had made a will and that the plaintiff was to have everything. As the measure of damages for breach of the express contract under the first count "everything" was unexceptionable. But breach of that contract was not in question when the case was submitted to the jury. "Everything" might be more than the fair value of the services rendered under the implied contract. Not only could the argument afford the jury no aid; it had a positively prejudicial tendency to lead the jury to award damages on the basis of the express contract that was completely out of the case.

Subject to exception, also, it was argued that the plaintiff lost her position more than six years prior to the death of the deceased because of the time she gave to serving Mrs. Tasker. Though the defendant did not plead the statute of limitation, this was irrelevant to the issue of damages, for the fair value of the services rendered could not depend upon loss of other employment. *Ernshaw* v. *Roberge*, 86 N. H. 451, 456. The argument was improper.

The evidence of the time spent by the plaintiff in the service of Mrs. Tasker was too indefinite to justify the amount of the verdict. The arguments of the plaintiff's counsel had a prejudicial tendency that is not negatived by the sum awarded for intermittent, part-time services.

*Judgment for the defendant on the second count.*

All concurred.                                    *New trial on the other counts.*