Belknap
No. 78-078

BEVERLY HUMISTON

v.

STUART BUSHNELL, INDIVIDUALLY AND
AS ADMINISTRATOR OF THE ESTATE
OF PAUL C. BUSHNELL

November 15, 1978

*Michael C. Murphy*, of Laconia, by brief and orally, for the plaintiff.

*James D. O'Neill*, of Laconia, by brief and orally, for the defendant.

BOIS, J.   This reserved case requires us to review three findings for the plaintiff, Beverly Humiston, entered subsequent to a hearing on a bill in equity before a Master (*Robert A. Carignan*, Esq.). During the course of the hearing, the defendant seasonably excepted to certain rulings of the court, to the denial of certain of his requests for findings of fact, and to the master's report as contrary to the law and the evidence. All questions of law were reserved and transferred by *Batchelder*, J.

The master found first, that title to several items of personalty had passed to the plaintiff from the decedent, Paul C. Bushnell, by inter vivos gift; second, that the plaintiff and the decedent had been engaged in a joint business venture, which entitled the plaintiff to one-half of the proceeds earned by the decedent's estate in liquidating that enterprise; and third, that the decedent had orally promised to devise a certain parcel of realty to the plaintiff, and that the decedent's promise is specifically enforceable. The defendant, administrator of the estate, excepted to all three findings. We overrule the defendant's exception to the master's first two findings; we sustain his exception to the third finding and to the decree ordering specific performance.

The plaintiff and the decedent became acquainted during the 1950's. Soon thereafter, the plaintiff was divorced and began to perform various chores on the decedent's farm. She continued to do so until the decedent sold the farm in 1966. After the sale, the decedent gave a separately located parcel of land to the plaintiff. There she built her home.

The decedent was divorced in the late 1960's. In 1970, the plaintiff suggested that he move into her home. He did and, although they never married, they cohabited continuously until 1975. The plaintiff contends, and the master found, that on several occasions during this period of time and subsequently, the decedent orally promised to devise a certain parcel of land to her. No written memorandum concerning this alleged promise was ever executed. While cohabiting, the plaintiff and the decedent operated a joint farming venture, sharing profits and losses.

The decedent severed his intimate relationship with the plaintiff and departed from her home in 1975; nevertheless, they continued their business relationship. He never returned to live with the plaintiff, and died on January 20, 1976. The evidence further indicates that when the decedent left plaintiff's home, he abandoned several items of his personalty, leaving them in the plaintiff's possession.

*The Inter Vivos Gifts*

The master awarded several items of personalty, initially included in the decedent's estate, to the plaintiff. The master based the award on a finding that the decedent had transferred title to the personalty to the plaintiff by inter vivos gift when he abandoned them in her possession. A valid gift requires a " 'manifest intention of the donor to give' and an unconditional delivery of the thing given." *Nashua Trust Co. v. Mosgofian*, 97 N.H. 17, 19, 79 A.2d 636, 637 (1951). Delivery and expression of donative intent need not be contemporaneous; delivery may precede the formation of the donor's intent. *Anderson v. Lord*, 87 N.H. 474, 475, 183 A. 269, 270 (1936); *see Arwe v. White*, 117 N.H. 1025, 381 A.2d 737 (1977). The master could reasonably infer the decedent's donative intent from his abandonment of his personalty in the plaintiff's possession.

"Our only function is to determine whether a reasonable man could have reached the same decision as the master on the basis of the evidence before him." *Sargent Lake Ass'n v. Dane*, 118 N.H. 720, 722, 393 A.2d 559, 561 (1978). Employing this standard of review, we hold that sufficient evidence appears in the record to support the master's finding of donative intent.

*The Joint Venture*

The record supports the master's finding that the plaintiff and the decedent operated a joint farming venture from 1970 until the decedent's death in 1976. The record further supports the master's implicit finding that they contributed equally to the operation of their enterprise. Whether individuals are parties in a joint venture is a question of fact for determination by the trier of fact exclusively. *Lakeport Nat'l Bank v. Loring*, 80 N.H. 337, 338, 116 A. 638, 639 (1922). Parties in a joint venture stand in the same relationship to each other as do partners in a partnership. *Id. Compare Cohen v. Frank Developers, Inc.*, 118 N.H. 512, 389 A.2d 933 (1978).

When a partner dies, his estate is entitled only to his proportionate share of the partnership's assets. RSA 304-A:40 II, III (Supp. 1977). Thus, the master's award to the plaintiff, as the surviving party in a

joint venture, of one-half of the proceeds from the sale of the cattle and hay by the estate's administrator is proper.

*The Alleged Promise to Devise Realty*

■ The final issue is whether the record supports the master's finding that the decedent had orally promised to devise a certain parcel of realty to the plaintiff and that the promise is specifically enforceable. The plaintiff neither made an assertion nor offered any proof that written memoranda of the alleged promise ever existed. The plaintiff's action on the alleged promise is, therefore, barred at law by the Statute of Frauds, RSA 506:1. "It is undisputed that an oral contract to leave real estate by will is unenforceable under the Statute of Frauds." *Munson v. Raudonis*, 118 N.H. 474, 477, 387 A.2d 1174, 1176 (1978); *Blanchard v. Calderwood*, 110 N.H. 29, 260 A.2d 118 (1969).

■ Although oral promises to transfer an interest in realty are usually unenforceable, the plaintiff contends that her performance of certain services in reliance upon the promise takes it out of the Statute of Frauds. This contention presupposes the existence of the alleged oral promise which we find did not exist. The master states that he found that the decedent "*intended* that the real property claimed by the plaintiff should become the plaintiff's upon his death." (Emphasis added.) The record does supply evidence sufficient to support the master's inference that a mere *intention* may have existed. The record does not support, however, the master's finding that the decedent ever actually *promised* to devise realty to the plaintiff.

We will reverse the finding of the factfinder when it cannot "reasonably be made on the evidence," *Archambault v. Adams*, 118 N.H. 634, 638, 392 A.2d 139, 142 (1978), or when it "can be said to be erroneous." *Beaudoin v. Beaudoin*, 118 N.H. 325, 327, 386 A.2d 1261, 1263 (1978).

We have often held that the quality of proof necessary to enforce an oral promise to devise realty must be "clear and convincing." *Sullivan v. Dumaine*, 106 N.H. 102, 105, 205 A.2d 848, 850 (1964); *Boyle v. Dudley*, 87 N.H. 282, 284, 179 A. 11, 13 (1935); *see* 2 A. Corbin, Contracts § 442 (1950). Even compelling equities and a sense of moral justice do not create an obligation where one has never existed. *Sullivan v. Dumaine*, 106 N.H. 102, 104, 205 A.2d 848, 850 (1964); B. Sparks, Contracts to Make Wills 22–24 (1956).

The record in this case is conclusive. The plaintiff's own testimony shows that only discussions and expressions of intentions occurred

between the decedent and plaintiff. No actual promise was ever made. The plaintiff testified during direct examination:

> We talked about it at times, nothing in length, that we— well, we've got to get going, get down and get a will made but were concerned about our children and *we just couldn't come to a decision* as far as where they were concerned and that's why we never got to making the will. It was definite that he wanted me to have the barn and it was definite that I wanted him to have the house *but we were concerned.* (Emphasis added.)

"Frequent declarations by a decedent of his intention to leave his property to a particular person coupled with consideration services rendered by that person to the decedent does not create a contract." B. Sparks, Contracts to Make Wills 23 (1956).

The plaintiff's own testimony, in addition to that of five other witnesses, requires us to hold that the master's finding of an oral promise "[is] without evidence to support [it]," *Rule v. Adams*, 118 N.H. 338, 339, 386 A.2d 1258, 1259 (1978), and cogently so where "clear and convincing" is the standard for the quality of evidence necessary for such a finding. We sustain the defendant's exception to the master's decree ordering specific performance.

■ The plaintiff does, however, have a cause of action in *quantum meruit* for the years of intimate, confidential, and dedicated personal and business service which she gave the decedent. *Blanchard v. Calderwood*, 110 N.H. 29, 34, 260 A.2d 118, 121–22 (1969); *Sullivan v. Dumaine*, 106 N.H. 102, 105, 205 A.2d 848, 850 (1964); *Lemire v. Haley*, 91 N.H. 357, 362, 19 A.2d 436, 440–41 (1941); *Muir v. Bartlett*, 78 N.H. 313, 314, 99 A. 553, 554 (1916). The record supports the master's conclusion that the plaintiff performed her services for the decedent with an expectation of being ultimately compensated. The plaintiff is entitled to the "fair value" of the services performed. *Blanchard v. Calderwood, supra* at 34, 260 A.2d at 122. See 2 A. Corbin, Contracts § 436 (1950); 1 W. Page, Wills § 10:29 (1960 ed.).

We therefore remand this case to the superior court where the plaintiff shall be given a money award equal to the value of the services that she performed for the decedent from the time that he moved into her home in 1970 until his death in 1976.

*Exceptions sustained in part, overruled in part; remanded.*

All concurred.