Hillsborough
No. 80-066

NAPOLEON SHAKA *& a.*

v.

JAMES A. SHAKA, EXECUTOR,
ESTATE OF ZELLA SHAKA

December 3, 1980

*Craig, Wenners, Craig & McDowell,* of Manchester (*Joseph F. McDowell, III,* orally), for Napoleon Shaka.

*Burns, Bryant, Hinchey, Cox & Shea,* of Dover (*James H. Schulte* orally), for Joan Aliapoulios.

*Brown & Nixon,* of Manchester (*Frank E. Kenison* orally), for the defendant.

GRIMES, C.J.   The question we decide in this equity proceeding is whether the trial judge erred in not setting aside the jury's finding that the testator and her deceased husband had made an oral agreement which bound her to leave her estate to his three children in equal shares. Because the evidence supports the verdict, we affirm.

Athan Shaka was born in Greece in 1876. He came to this country in 1900 but returned to Greece a few years later and married Vasiliky, by whom he had a daughter, Ora, while still living in Greece. The family later moved to this country where Athan's first son, Napoleon, was born. Vasiliky died in 1918.

In 1921, Athan and Zella Shaka were married. They had a son, James, in 1926.

Athan opened a cobbler shop in Manchester, and the business grew into a profitable shoe business. It was a family business to which all the members of the family devoted all their spare time. Over the years, a sizable estate was created which now exceeds $250,000.

In 1945, Athan and Zella executed wills, each leaving their entire estate to the other except that Athan left one dollar to each of the three children and Zella created a fund to be held in trust by Athan which was to be used for James' education if it had not been completed at the time of Zella's death. Athan died in 1947. There was evidence that Napoleon and Ora were concerned about the terms of their father's will because they had been told that his estate would be divided equally, that they did not contest the will because they were told by Zella that she had made an agreement with Athan to leave her estate to the three children equally, and that James had told them that no matter what happened, he would see that the property was divided equally.

Zella executed another will in 1965 and a third in 1973. After Zella's death in 1975, her 1973 will was admitted into probate and proved in common form. Her estate consisted of what she had received under Athan's will. Under her will Napoleon was given $10,000, Joan Aliapoulios, the only child of Ora, who had died in

1973, was given $2,000, a niece was left $1,000, and the entire residue was left to James.

The plaintiffs brought a bill in equity claiming that Athan and Zella had contracted to execute irrevocable mutual wills and that this contract included an agreement that the survivor would leave the entire estate to be divided equally among the three children. *Wyman*, J., submitted to a jury the question whether Athan and Zella had entered "into an oral agreement that each of them would execute irrevocable wills leaving their property to one another and then to Athan's children in three equal shares." The jury answered in the affirmative. The defendant moved to set aside the verdict, but the court declined to do so and entered a decree dividing the estate equally: one-third to Napoleon, one-third to Joan as the sole heir of Ora, and one-third to James. The court further decreed that the executor was to hold the estate's assets in constructive trust for the three children and was to distribute these assets in accordance with the decree. The defendant appealed.

■ The sole issue before us is whether the jury's finding is supported by the evidence. Our task is to determine whether a reasonable person could reach the same conclusion as the jury and the court on the basis of the evidence before them. *Humiston v. Bushnell*, 118 N.H. 759, 761, 394 A.2d 844, 845 (1978). The court properly charged the jury that an affirmative answer to the question submitted must be based on clear and convincing evidence. *Foley v. Hospital*, 98 N.H. 186, 188, 96 A.2d 735, 737 (1953); *Boyle v. Dudley*, 87 N.H. 282, 284, 179 A. 11, 13 (1935).

■ ■ It is well-settled that a person, by contract, may bind himself to make a particular testamentary disposition of his property and may validly renounce the power to revoke his will. *Knox v. Perkins*, 86 N.H. 66, 70, 163 A. 497, 499 (1932); *see Foley v. Hospital, supra.* The existence of such an agreement may be found from the terms of the will, the surrounding circumstances or the express statements of the parties. *Foley v. Hospital, supra* at 188–89, 96 A.2d at 737; *Boyle v. Dudley, supra* at 284, 179 A. at 13.

The defendant argues that, although there was evidence of an intention on the part of both Athan and Zella to leave the estate equally to the three children, there is no evidence to support the jury's finding that there was a binding contract to do so. We disagree.

■ There was testimony that Zella on several different occasions had stated that she and Athan had agreed that the

property would go equally to the three children. One occasion was when the plaintiffs were considering contesting their father's will. To be sure, some of this testimony came from interested parties, but it is consistent with the testimony of a number of disinterested witnesses regarding the intent of the parents expressed consistently over a long period of time. It was for the jury to decide whether to believe the interested witnesses. *Sargent Lake Ass'n v. Dane*, 118 N.H. 720, 721, 393 A.2d 559, 560 (1978); *Gordon v. Gordon*, 117 N.H. 862, 865–66, 379 A.2d 810, 813 (1977). The jury apparently accepted the testimony as true. This was not unreasonable in view of the independent evidence regarding the parents' intent.

The trial judge also heard the same testimony and saw the same witnesses as the jury. He was not bound by the jury's verdict, yet he too was satisfied that a binding agreement had been made and accepted the jury's verdict. The jury's findings are supported by evidence sufficient to meet the clear and convincing evidence test and therefore must stand.

The execution of similar wills by husband and wife always leaves lurking in the background the specter of irrevocable mutual wills. Draftsmen therefore should consider including in such wills language which either establishes or negates the existence of an agreement.

*Appeal dismissed.*

All concurred.