Rockingham
No. 82-032

DOROTHY M. TAPLEY

v.

GEORGE E. TAPLEY, SR.

August 6, 1982

*Sanders & McDermott P.A.*, of Hampton *(Ann C. Thompson* on the brief and *Wilfred L. Sanders, Jr.*, orally), for the plaintiff.

*Shaines, Madrigan & McEachern P.A.*, of Portsmouth (*Robert A. Shaines* on the brief and orally), for the defendant.

*Eldredge & Eldredge*, of Portsmouth (*Pamela D. Eldredge* on the brief), by brief for the Women's Resource Center, Inc., as amicus curiae.

KING, C.J.   The plaintiff, Dorothy M. Tapley, filed a bill in equity against the defendant, George E. Tapley, Sr., which, among other things, asked for permanent support from the defendant and sought recovery based on principles of contract law and equity. The defendant moved to dismiss the plaintiff's bill on the ground that existing law does not afford the plaintiff any relief. The Superior Court (*Temple*, J.), on December 16, 1981, granted the motion to dismiss and, on January 13, 1982, denied a further motion of the plaintiff to set aside the ruling, and the plaintiff filed this appeal. We remand.

The plaintiff, Dorothy M. Tapley, and the defendant, George E. Tapley, Sr., were married on February 8, 1971. Five months later, on July 19, 1971, the defendant was granted an annulment of this marriage through a default decree. Subsequent to the annulment, the parties continued to live together as unmarried cohabitants for approximately ten years. In or about December of 1971, and at various times thereafter, the parties discussed remarriage. On May 18, 1981, the defendant severed his relationship from Dorothy by moving out of the parties' residence, and he remarried his former wife, Helen Tapley, about three months later. At the date of the

hearing in the superior court in December 1981, the plaintiff was fifty-five years old and the defendant was fifty-eight years old. The plaintiff, who has a high school education, has never been employed outside of the home.

The plaintiff, after the annulment of the marriage and the continuation of cohabitation, dealt with various realtors, endeavoring to locate a permanent home for the parties. In November 1971, she located real estate in the Town of Hampton, which was transferred from the sellers to the defendant and, thereafter, was continuously occupied by the parties. The house contained a rental unit.

In approximately ten years of cohabitation, Dorothy performed housekeeping chores, including preparation of meals, laundering, care and cleaning of the home, keeping the financial books, payment of bills, banking, shopping, showing their rental property, and caring for the defendant's infant child on weekends. In addition, the parties opened joint checking accounts, shared medical insurance, and represented themselves as married on official documents. The plaintiff received total support from the defendant except for child support from her former husband, monetary gifts from her parents, and small sums she earned from tag sales. The defendant also supported Dorothy's daughter for two years subsequent to her eighteenth birthday when her natural father's support payments to her had stopped.

The plaintiff seeks reasonable compensation and permanent support for the household services she rendered to the defendant during the period of their cohabitation. Entitlement to such compensation and support is claimed upon theories of implied contract and quantum meruit.

■ Recently this court ruled that, upon the dissolution of a non-marital living arrangement, either party may seek a judicial determination of the equitable rights of the parties in particular property. *Joan S. v. John S.*, 121 N.H. 96, 99, 427 A.2d 498, 500 (1981). We decline, however, to extend the holding of that case beyond recovery on a theory of express contract to include recovery for domestic services under an implied contract or in quantum meruit.

■ We are cognizant that the courts in other jurisdictions are split as to whether to recognize an action based on an implied contract between non-marital parties. We adhere to the view of those jurisdictions that have concluded that until their legislatures determine otherwise, they will not recognize a contract which is implied from the rendition and acceptance of "housewifely services."

One justification for this decision is declared by the Court of Appeals of the State of New York:

> "The major difficulty with implying a contract from the rendition of services for one another by persons living together is that it is not reasonable to infer an agreement to pay for the services rendered when the relationship of the parties makes it natural that the services were rendered gratuitously. . . . As a matter of human experience personal services will frequently be rendered by two people living together because they value each other's company or because they find it a convenient or rewarding thing to do. . . . For courts to attempt through hindsight to sort out the intentions of the parties and affix jural significance to conduct carried out within an essentially private and generally noncontractual relationship runs too great a risk of error. Absent an express agreement, there is no frame of reference against which to compare the testimony presented and the character of the evidence that can be presented becomes more evanescent. There is, therefore, substantially greater risk of emotion-laden afterthought, not to mention fraud, in attempting to ascertain by implication what services, if any, were rendered gratuitously and what compensation, if any, the parties intended to be paid."

*Morone v. Morone*, 50 N.Y.2d 481, 488, 413 N.E.2d 1154, 1157 (1980) (citations omitted). *But see Marvin v. Marvin*, 18 Cal. 3d 660, 682, 134 Cal. Rptr. 815, 830, 557 P.2d 106, 121 (1976).

■ Furthermore, we refuse to permit recovery on a theory of quantum meruit. We realize that couples enter into these unstructured domestic relationships in order to avoid the rights and responsibilities that the State imposes on the marital relationship. It would be incongruous for a court to impose on the parties, after the relationship has dissolved, the same consequences of marriage that they have sought to avoid when they entered into their arrangement. *See* Fineman, *Law and Changing Patterns of Behavior: Sanctions on Non-Marital Cohabitation*, 1981 Wis. L. Rev. 275, 325; Deech, *The Case Against Legal Recognition of Cohabitation*, 29 INT'L & COMP. L.Q. 480, 482–83 (1980).

■ This holding is not meant to limit recovery for business and personal services, other than normal domestic services, rendered between unmarried cohabitants. In *Humiston v. Bushnell*, 118 N.H. 759, 761–62, 394 A.2d 844, 845 (1978), we permitted an unmarried

individual to recover from her cohabitant's estate her share of a joint farming venture on a partnership theory. We also allowed her to pursue recovery in quantum meruit for business and special personal services rendered to the decedent. *Id.* at 763, 394 A.2d at 846–47.

The agreed statement of facts indicates that the plaintiff tendered the numerous household services and business services for the defendant "with the expectation that she would receive valuable benefits in return." While the agreed facts do not expressly state that no express contract for compensation or division of property existed, and no such claim was made to the superior court, they do not totally exclude such claims.

■ In *Joan S. v. John S.*, 121 N.H. at 100, 427 A.2d at 500, we permitted reinstitution of a bill in equity in the superior court if it was filed within sixty days. We will grant similar relief in this case and allow an amendment within sixty days of the date of this opinion. If no amendment is filed, the bill in equity is dismissed. We advise the bar that in future appeals such amendments presenting grounds not submitted to the trial court shall be allowed only in exceptional instances.

*Affirmed; remanded.*

All concurred.