Rockingham
No. 82-443

JOANNE M. BISIG

v.

RICHARD W. BISIG

December 29, 1983

*Nadeau Professional Offices*, of Rye (*J. P. Nadeau* on the brief and orally), for the plaintiff.

*Sanders & McDermott P.A.*, of Hampton (*Lawrence M. Edelman* on the brief, and *Patricia McKee* orally), for the defendant.

DOUGLAS, J. The issue in this appeal is whether cohabitation by a former spouse is a ground for relieving the other former spouse of his or her obligation to pay alimony. We hold that cohabitation is not a ground, in and of itself, for suspending or reducing the obligation to pay alimony.

The parties were divorced by decree of the superior court in June 1981. The decree provided that the defendant, Richard W. Bisig, was to pay the plaintiff, Joanne M. Bisig, alimony in the sum of $1,500 per month until she died or remarried. In April 1982, the defendant moved to suspend alimony on the basis that the plaintiff was cohabiting with a third person. The defendant claimed that the facts surrounding the cohabitation constituted a substantial change in circumstances warranting either suspension of alimony or, in the alternative, reduction of the alimony award. After a hearing, the Master (*Larry B. Pletcher*, Esq.) recommended that "said alimony payment shall be reduced to $1,100 per month during such period as [p]laintiff cohabits with Donald Mayer. . . ." The Superior Court (*Bean*, J.) approved the master's recommendation and ordered that the alimony payments be reduced to $1,100 per month. The plaintiff appealed, and argues here that the reduction was unjust because it was based solely upon her cohabitation with a third person. The defendant alleges that the trial court erred in declining to suspend payment of alimony during the period of cohabitation.

The defendant urges this court to adopt a rule prescribing, in the absence of special circumstances, *suspension* of alimony during a period of unmarried cohabitation. His argument is that since under *Eaton v. Eaton*, 90 N.H. 4, 3 A.2d 832 (1939), alimony is terminated upon the solemnization of a subsequent marriage, irrespective of the new spouse's income, and since cohabitation as in the instant case so closely resembles marriage, a rule like that in *Eaton* should be adopted and applied for unmarried cohabitation.

In *Eaton*, we held that marriage terminates the right to further alimony, unless extraordinary circumstances would make it inequitable for the alimony to cease. *Id.* at 7, 3 A.2d at 834. We reasoned that the "new marriage, bestowing upon [the former wife]

the right to support from a new source, terminates her right to support from the [former husband]. . . . [S]he ought not to have two supports at the same time." *Id.* This reasoning does not apply to the case of an unmarried cohabitant receiving alimony, because unmarried cohabitants are under no legal obligation to support each other. "Generally, a person who cohabits with another . . . acquires no rights in the accumulations of the other." DOUGLAS, 3 NEW HAMPSHIRE PRACTICE, FAMILY LAW § 53 (1982). The right to "spousal" support is predicated upon the existence of a valid marriage.

Various benefits, including legal rights and duties, arise from marriage which do not arise from cohabitation. This court recognized this principle when it stated: "[c]ouples enter into . . . unstructured domestic relationships in order to avoid the rights and responsibilities that the State imposes on the marital relationship." *Tapley v. Tapley*, 122 N.H. 727, 730, 449 A.2d 1218, 1220 (1982). The right to support does not arise from cohabitation. Hence, the mere resemblance of cohabitation to marriage does not require that alimony be suspended. "It would be incongruous for a court to impose on the parties the same consequences of marriage that they . . . sought to avoid when they entered into their arrangement." *Id.*

There can be no claim of marriage in the case at bar. New Hampshire "does not recognize the validity of common-law marriages," *Joan S. v. John S.*, 121 N.H. 96, 98, 427 A.2d 498, 499 (1981) (quoting *Fowler v. Fowler*, 96 N.H. 494, 497, 79 A.2d 24, 27 (1951)), except to the limited extent provided in RSA 457:39. Generally, for marriage to be recognized in New Hampshire, the conditions of RSA chapter 457 must be met. Here, the statutory conditions have not been met. Thus, the master correctly determined that the "[p]laintiff and Donald Mayer are not living together as man and wife as alleged."

We hold that cohabitation does not automatically *suspend* the right to alimony and now consider whether cohabitation can be a ground for *reducing* alimony. New Hampshire's alimony statute does not include criteria for determining alimony, but merely directs the courts to award alimony as they deem "just." RSA 458:19 (Supp. 1983). "Notwithstanding the numerous considerations involved, trial courts have broad discretion in matters involving alimony. . . ." *Marsh v. Marsh*, 123 N.H. 448, 451, 462 A.2d 126, 128 (1983). "These considerations apply to the original award as well as to any modification thereof. . . ." *Fortuna v. Fortuna*, 103 N.H. 547, 548, 176 A.2d 708, 709 (1961). To obtain a modification of an alimony award, a substantial change in circumstances in the financial

condition or needs of the parties must be shown. *Id.* at 549, 176 A.2d at 710.

 Cohabitation, in and of itself, is not a ground upon which alimony may be modified or suspended. Cohabitation by an alimony recipient is, however, to be considered a substantial change in circumstance if it substantially changes the financial condition or needs of the recipient so that a continuance of the original decree would be unjust.

 In the instant case, the master found that the defendant "alleged and proved substantial changed circumstances of the [p]laintiff consisting of her present cohabitation with Donald Mayer and Donald Mayer's financial assistance to [p]laintiff for rent, utilities, food and travel and entertainment." He then ordered that the alimony payments be reduced during the period in which the plaintiff cohabits with Mr. Mayer. "[A] modification will be set aside only if upon the evidence it clearly appears that there has been an abuse of discretion." *Fortuna v. Fortuna*, 103 N.H. 547, 548, 176 A.2d 708, 709 (1961). The record demonstrates that the master went beyond the mere fact of cohabitation and considered the change in the financial condition or needs of the plaintiff. The evidence supports the master's recommendation and, consequently, we cannot say that the master abused his discretion.

 The parties' intent, as expressed in their stipulations which were incorporated into the divorce decree, is clear. The plaintiff is to receive alimony as long as she lives and does not remarry. The parties could have avoided a court appearance by agreeing that alimony would be suspended or reduced if the recipient engaged in a relationship resembling marriage by using words such as: "if she enters into a quasi-conjugal living arrangement." Absent such a provision, a court may not suspend or modify alimony payments unless there is a substantial change in the economic circumstances of the recipient.

 We find no merit in the plaintiff's argument that the trial court's determination violates her constitutional right of freedom of association.

*Affirmed.*

All concurred.

(SOUTER, J., did not sit.)