**In re MILDEVCO, INC., Debtor.**

**In re MILAMTON CORP., Debtor.**

**In re MILAM DEVELOPMENT, INC., Debtor.**

**Bankruptcy Nos. 84–00499–BKC–SMW to 84–00501–BKC–SMW.**

United States Bankruptcy Court, S.D. Florida.

June 27, 1984.

R. Thomas Farrar, Miami, Fla., Robert Schatzman, Coral Gables, Fla., for creditor.

Timothy J. Norris, Miami, Fla., for debtor.

ORDER GRANTING MOTION TO DISMISS

SIDNEY M. WEAVER, Bankruptcy Judge.

These cases came before the Court upon Florida National Bank, N.A.'s ("FNB") motion to dismiss each based upon the debtors' lack of good faith in filing their petitions under Chapter 11 of the Bankruptcy Code. Although the cases have not been substantively or administratively consolidated, on May 24 and 25, 1984 the Court heard and considered argument and the testimony of several witnesses at a single hearing, there being no substantial difference among the debtors. Based thereon, the Court makes the following findings of fact and conclusions of law and hereby dismisses all three cases.

Each debtor is a Florida corporation the sole asset of which is an undivided twenty

percent interest in a 21-acre parcel of real property in Dade County, Florida, located near Miami International Airport and being developed as a condominium warehouse project. The remaining forty percent of the project is owned by Adams Land Company ("Adams Land") which is not a debtor and which has represented through its counsel that it supports FNB's motion to dismiss.

The debtors were formed in 1981 for the purpose of participating in this project. The president and sole director of each is Edward Pastucha, a New York private international lawyer, and their sole shareholder is MDT Royal, S.A., a Panamanian corporation, the shares of which in turn are owned by 11 or 12 Kuwaiti entities or individuals together with a Liberian corporation and Pastucha. Pastucha also serves, together with a nominee required by Panamanian law, as the officer and director of MDT Royal.

The land for the project was purchased in 1981 for $3,641,616.00, and since then was improved by sitework at an expense of $700 thousand to $800 thousand. The land has been graded, filled and platted, with building pads constructed and water and sewer facilities connected. The project as initially conceived contemplated construction of three warehouse buildings to be converted into condominium units and subsequently sold to a sales company.

In October 1982, the project was mortgaged to FNB for approximately $3 million. The loan went into default thereafter because the principals (*i.e.*, the debtors and Adams Land) were unable to agree whether or how to provide additional capital and because they were unable to find additional loans to the project. On January 24, 1984, the Dade County Circuit Court entered summary final judgment of foreclosure in favor of FNB in the approximate amount of $3.4 million. Judicial sale of the property was scheduled for March 21, 1984, but on March 20, 1984 the debtors filed their petitions under Chapter 11.

The land has been appraised at $4 million to $4.2 million. The debtors' schedules reflect secured and unsecured debts of $3,627,000.00 and $294,000.00 respectively, including unpaid real property taxes and penalties of $147,119.78 for 1982 and 1983. All but about $10,000.00 of the unsecured debt, however, is to affiliated or related persons or entities rather than to independent third parties. Extensive efforts have been made to sell the property for several years but have proved unsuccessful. A fifty percent presale requirement of the project's construction loan, for example, was not met by a single presale of a condominium unit.

Prior to the filing of the petitions herein, the project was managed by Adams Land, with the debtors playing an extremely passive role. The debtors have no office, although they can receive mail care of Mr. Pastucha's New York law office. They have no employees, no telephone, no stationery, nor any income. They have no bank account, have never paid any bills, never wrote a check, nor had a budget. Aside from the real property, they have had no loans nor have they kept any independent accounting records. Their corporate records have not been kept up to date since 1981. They have filed no U.S. nor Florida tax reports. The information used to complete their Schedules came from Adams Land. The first and only substantive act they have ever performed was to file the petitions in these cases.

After the filing of the petitions on the eve of foreclosure sale, the debtors hired Cushman & Wakefield to prepare an appraisal and to devise a new marketing plan for the project, for which they paid $6,000.00, or an amount approaching that of the unsecured debt owing to unrelated third parties. Cushman & Wakefield has apparently given a preliminary opinion that pursuant to a new marketing theory the land should be replatted and sold in one-half acre parcels to third parties, rather than as three warehouse buildings as the project has been contemplated since its inception. Testimony at the hearing indicated that further sitework would be re-

quired to do so, however, at a cost of several hundred thousand dollars.

Testimony also indicated that since the filing of the petitions the Kuwaiti investors have been seeking new investors for the project. None have been found. No plans exist to pay the real estate taxes or to make any payments upon the other secured and unsecured debts. Neither has any money been deposited, or other capital committed, as a token of good faith.

Prior decisions of this Court and others lead to the conclusion that under all the circumstances the petitions herein were not filed in "good faith" and accordingly should be dismissed. As this Court held in *In re Lotus Investments, Inc.*, 16 B.R. 592, 594 (Bkrptcy S.D. Fla.1981):

> Although Chapter 11 of the Bankruptcy Code by its literal terms does not require that a petition be filed in "good faith" (unlike Chapter X of the Bankruptcy Act), courts have refused to permit debtors to proceed with Chapter 11 cases where there is a lack of "good faith" in the filing of the petition. It can be argued that Chapter 11 does impose a "good faith" requirement, albeit through the § 1112(b) ground of dismissal for inability to effectuate a plan in conjunction with the "good faith" requirement found in § 1129(a)(3). In any event, courts have found "good faith" to be implied by Chapter 11....

The outlines of the good faith concept are emerging from the caselaw. Where a debtor's reorganization effort involves essentially a two-party dispute which can be resolved outside the bankruptcy court's jurisdiction, and the purpose of the filing is to frustrate a creditor's sale, it has been held that the petition was not in good faith. *See In re Landmark Capital Company*, 27 B.R. 273 (Bkrptcy D. Ariz.1983). It is an imposition on a bankruptcy court's jurisdiction to file a case in order to permit the principals of the debtor to retrieve, at their creditors' risk, a portion of their investment by appreciation in land values or some new but untested marketing theory.

*Cf, In re The Alison Corp.*, 9 B.R. 827 (Bkrptcy S.D.Cal.1981).

Chapter 11 is not intended to be used simply as a means of preventing a creditor from enforcing its claims. *In re Nikron, Inc.*, 27 B.R. 773 (Bkrptcy E.D. Mich.1983). The absence of unsecured creditors, or as here the nominal amount of unsecured debt, is evidence that a Chapter 11 case has not been filed in good faith. *In re FJD, Inc.*, 24 B.R. 138 (Bkrptcy D. Nev. 1982); *In re Dutch Flat Investment Co.*, 6 B.R. 470 (Bkrptcy N.D.Cal.1980). Where the debtor attempts to use the provisions of Chapter 11 to create and organize a new business and to embark on a new speculative real estate venture, the filing is not in good faith. *See In re Victory Const. Co.*, 9 B.R. 549 (Bkrptcy, C.D. Cal.1981).

One circumstance leading courts to dismiss cases under the good faith requirement, presenting analogy to the instant petitions, is the "new debtor syndrome." These dismissals occur where a debtor corporation is formed, often shortly before the petition is filed, for little purpose other than to obtain the benefit of the bankruptcy laws. These cases mandate dismissal because "bankruptcy courts should preserve their jurisdictional integrity by refusing to allow entities not eligible for bankruptcy relief to obtain relief by a transformation which lacks any legitimate business purpose." *In re Lotus Investments, Inc., supra* at 595. *See also In re Zed, Inc.*, 20 B.R. 462 (Bkrptcy N.D. Cal. 1982); *In re Alison Corp., supra.*

Numerous factors are considered in analyzing whether a debtor has undergone a transformation not involving legitimate business purpose. Among them are the presence or absence of the indicia of ordinary business operation such as bank accounts, offices, stationery, employees, and the like, which separate shells from substance. *E.g., In re Zed, Inc., supra.* This analysis is similar to that used by this Court in determining whether a land trust was a "business trust" or "corporation" entitled to protection under the Bankruptcy Code. *See Matter of Cohen*, 4 B.R. 201

(Bkrptcy S.D. Fla.1980). The focus is on the legitimacy of business purpose. *In re Lotus Investments, Inc., supra.*

In the instant cases, the debtors all are corporations and hence ostensibly eligible debtors under the Bankruptcy Code. Likewise, their title to the property was not by virtue of some recent transfer, and their post-petition employment of Cushman & Wakefield gives some semblance of business purpose (albeit *after* the petitions were filed). As in *Lotus Investments,* however, the Court must examine all of the circumstances surrounding the filing of the petition in determining the issue of "good faith," for the standard is an objective one rather than a question of the subjective intention of the petitioners.

Given the sudden life of dormant corporations, the utter absence of any substantial business activity prior to the filing and the lack of even the trappings of legitimate business existence, the basically two-party nature of the dispute which precipitated the filing coupled with the nominal amount of unsecured debt, the professed intention to embark on a new marketing scheme of indeterminate probability of success, and the apparent lack of reasonable prospects of successful reorganization evident even at this early stage, on balance the Court concludes that FNB has presented a *prima facie* case of lack of "good faith."

Because FNB has presented a *prima facie* case of lack of good faith, the Court, in order to preserve its own jurisdictional integrity, must satisfy itself that the debtors are properly within the contemplation of the Bankruptcy Code. The debtors have failed to persuade the Court that they are. The debtors rested at the conclusion of FNB's evidence and therefore were unable or elected not to present any further evidence of their own. Accordingly, these cases should be dismissed. *See In re Lotus Investments, Inc., supra* at 596; *see also In re G–2 Realty Trust,* 6 B.R. 549 (Bkrptcy D. Mass.1980).

FNB's motion to dismiss is granted, and it is hereby ordered that these cases be, and the same hereby are dismissed.