**In re ASSEMBLED INTERESTS CORP., Debtor.**

**Bankruptcy No. 90–983.**

United States Bankruptcy Court, D. New Hampshire.

July 24, 1990.

Douglas C. Reynolds, Deborah Griffin, Peabody & Arnold, Boston, Mass., for movant, Bank of New England.

Charles Glerum, Choate, Hall & Stewart, Boston, Mass., for Dartmouth Bank.

George G. Love, II, Bingham, Dana & Gould, Boston, Mass., for Coolidge Bank.

Debra Dyleski–Najjar, Wiggin & Nourie, Manchester, N.H., for Amoskeag Bank.

Frank D. Kirby, Dorchester, Mass., Thomas Hasco, Manchester, N.H., for debtor.

Kathleen Downing, Office of the U.S. Trustee, Boston, Mass., for U.S. Trustee.

## RULINGS AND FINDINGS OF FACT ON BAD FAITH FILING

HAROLD LAVIEN, Bankruptcy Judge.

This case presents the classic demonstration of the resourcefulness of an imaginative counsel. Mr. Kirby possesses one of those highly intelligent and truly creative legal minds. His clients, prior to his entry into the proceeding, had twice tried unsuccessfully to find a way to obtain the benefits of the automatic stay in Massachusetts. They had tried to avoid subjecting the beneficial owners' interests in anything but the trust realty to the jurisdiction of the bankruptcy court and thereby, ultimately, to the claims of creditors.[1] Enter

---

1. *In re Stephen M. Chapman as he is trustee of 18 Hemenway Trust and 28, et al,* No. 90–10421 HAL, dismissed February 15, 1990; *In re Heri-*

Mr. Kirby who reviewed the Massachusetts playing field and found that three of its bankruptcy judges had written opinions [2] that analyzed the problems posed when nominee trusts are candidates for bankruptcy filings. Though the decisions took somewhat different tacks as to what qualifies as a business trust, the judges agreed that no filing should be accepted that does not encompass the personal liability of the real parties in interest. But, of course, parties wish to avoid personal liability at all costs. Looking closer, Mr. Kirby ascertained another pattern in the three decisions. In at least two of the cases,[3] he found that the Court examined the actual conduct of the nominee trusts to determine that the beneficiary's activity really equated to that of a partnership or a principal and agent. He also discovered that a recent New Hampshire case [4] had even found that the beneficiary's activity had sufficed to make the trust akin to business trust. It should be noted, however, that the most recent New Hampshire case on trusts [5] seems to have withdrawn from that view. Based on the findings, Mr. Kirby attempted to be creative and resourceful. He posited that if nominee trusts could not be business trusts, but could be partnerships, then perhaps they could be considered as parts of one unincorporated entity or de facto corporate enterprise. Under this theory, he proceeded to form a de jure corporation two days before filing and one day before the scheduled foreclosure sale, transferred all of the interests in the trusts' realty to it, and with symbolic appropriateness, called the new corporation the "Assembled Interests Corp." Mr. Kirby also decided that it would make sense to play the game in a different ball park, one with maybe a closer wall in left field. Thus, the new corporation was organized in New Hampshire, where it filed Chapter 11. The corporation now owned the real estate which the credi-

tor was about to foreclose, but possessed no liquid assets. In fact, the Bank of New England continues as the mortgagee-in-possession, collecting the rental income for the 15 parcels of the 15 trusts now transferred to the newly formed corporation. Fourteen additional trusts and realty are still, presumably, under the jurisdiction of the Massachusetts bankruptcy court, where a stay pending appeal of their dismissal is in effect. In order to bolster his novel theory, counsel argued that the Court should not construe his approach as a precedent for all ineligible nominee trusts, but should limit its decision to the unique facts of this case—that all 29 trusts are operated as a single unincorporated entity using a single bank account and are described as a single enterprise in the promotional literature. Counsel argued that substance should prevail over form. Mr. Kirby then sought to dramatize the logic of his argument. He offered a zoological analogy to the effect that, in reality, calling an elephant a giraffe does not make the animal any less of an elephant. This is an obvious but irrelevant truth. A more cogent metaphor might be that a batter may use the same strength to hit the ball the same distance beyond the fielder's reach all to no avail, because there, the difference between a homerun and a foul ball is the rules of the game.

Thus, Mr. Kirby's argument fails. The various parties involved here could have organized its affairs in a variety of ways. They not only had legal advice, but, further, at least two of the primary players are experienced attorneys. The benefits of the various organizational devices were weighed and 29 individual nominee trusts were created to hold title to and invest in real estate. The parties thereby gained tax, personal liability limitations, and other

---

*tage North Dunlap Trust,* No. 90–10603HAL—10616–HAL (Bankr.E.D.Mass. May 15, 1990).

**2.** Judge Queenan's *In re Medallion Realty Trust,* 103 B.R. 8 (Bankr.D.Mass.1989); C.J. Gabriel's *In re Village Green Realty Trust,* 113 B.R. 105 (Bankr.D.Mass.1990); Judge Lavien's *North Heritage Dunlap Trust, supra.*

**3.** *In re Medallion Realty Trust, supra,* and *In re Village Green Realty Trust, supra.*

**4.** *In re Gonic Realty Trust,* 50 B.R. 710 (Bankr.D.N.H.1985).

**5.** *In re Woodsville Realty Trust,* 90–664 (Bankr. N.H. 6/28/90) not reported pending appeal.

benefits, which are the classic indicia of a nominee or real estate trust. In fact, the actual operations of the real estate in trust were not handled by the individual trustee, although each trust had its individual tax identification number, because the trusts were not organized to carry on a business. They were organized merely as a convenient method of holding title. The actual hands on development for each trust was provided by the employees of a separate entity, Heritage Associates, which, indeed, used a single bank account, but which maintained meticulous accounts for each trust. It was Heritage's reports and literature, not those of the trusts, that referred to all of the trust property it was managing. These determinations were made by the Court in Massachusetts when it dismissed the 14 remaining trusts. *See Heritage North Dunlap Trust*, Nos. 90–10603—90–10616HAL opinion dated May 15, 1990. In reality, the structure, in both form and substance, is nothing more than 29 nominee trusts. Metaphorically speaking, a woman who chooses the role of mistress may perform all of the duties of the wife, but, in reality, not be a wife—at least, not in New Hampshire, which does not recognize common law marriage. *Bisig v. Bisig*, 124 N.H. 372, 469 A.2d 1348 (1983). The parties knowingly and voluntarily chose to own each parcel in the name of a nominee trust. Like a mistress, they were able to reap the benefits of that choice and when the romance cooled, they could only blame themselves for not having chosen a different arrangement. It is now too late to claim the golden ring.

The rationale for dismissal in new debtor syndrome cases is concisely stated in *In re Mildevco, Inc.*, 40 B.R. 191 (Bankr.S.D.Fla. 1984):

> One circumstance leading courts to dismiss cases under the good faith requirement, presenting analogy to the instant petitions, is the "new debtor syndrome." These dismissals occur where a debtor corporation is formed, often shortly before the petition is filed, for little purpose other than to obtain the benefit of the bankruptcy laws. These cases mandate dismissal because "bankruptcy courts should preserve their jurisdictional integrity by refusing to allow entities not eligible for bankruptcy relief to obtain relief by a transformation which lacks any legitimate business purpose."

*In re Lotus Investments, Inc.*, 16 B.R. 592, 594 (Bankr.S.D.Fla.1981); *see also In re Zed, Inc.*, 20 B.R. 462 (Bankr.N.D.Cal. 1982); *In re Alison Corp.*, 9 B.R. 827 (Bankr.S.D.Cal.1981).

*In re Eighty South Lake, Inc.*, 63 B.R. 501 (Bankr.C.D.Cal.1986) applies equally to the pending case:

> This case falls squarely within the legally well-defined category of bad faith filings known as "new debtor syndrome". *In California Mortgage Service v. Yukon Enterprises, Inc. (In re Yukon Enterprises, Inc.)*, 39 B.R. 919, 921 (Bankr.C.D.Cal.1984), Judge Russell described this common factual pattern as follows:
>
> 1. The transfer of distressed real property into a newly created or dormant entity, usually a partnership or corporation;
> 2. The transfer occurring within close proximity to the filing of the bankruptcy case;
> 3. No consideration being paid for the transferred property other than stock in the debtor;
> 4. The debtor having no assets other than the recently transferred distressed property;
> 5. The debtor having no or minimal unsecured debts;
> 6. The debtor having no employees or ongoing business;
> 7. The debtor having no means other than the transferred property to service the debt on the property.

The *Yukon* case held that:

> [O]nce the creditor establishes the transfer of the distressed property to the debtor was in close proximity to the filing of the case, a *prima facie* showing of bad faith has been shown, thus creating a rebuttable presumption of bad faith. *Id.* at 921.

*See also, Duggan v. Highland–First Avenue Corp.*, 25 B.R. 955 (Bankr.C.D.Cal.

1982). Putting aside the giraffe and elephant metaphor, this attempt to create a shell corporation two days before filing and one day before foreclosure would, in and of itself, be strong evidence of bad faith and, thus, cause for dismissal.

It is now well established that although Chapter 11 does not expressly make good faith a condition of the right to file, cases have defined "cause" in § 1112(b) broadly enough to include a lack of good faith. The section's list has been deemed as non-exclusive examples. *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); *In re Bryan*, 104 B.R. 554 (Bankr.D. Mass.1989); *In the Matter of Nancant*, 8 B.R. 1005 (Bankr.D.Mass.1981); *see In re Eden Associates*, 13 B.R. 578, 583–85 (Bankr.S.D.N.Y.1981); *In re Victory Construction Co., Inc.*, 9 B.R. 549, 555–56, 558, 564–65 (Bankr.C.D.Cal.1981); *In re G–2 Realty Trust*, 6 B.R. 549, 552–54 (Bankr.D. Mass.1980); *In re Dutch Flat Investment Co.*, 6 B.R. 470, 471–72 (Bankr.N.D.Cal. 1980); *see also In the Matter of Levinsky*, 23 B.R. 210, 219–20 (Bankr.E.D.N.Y.1982); *In the Matter of Northwest Recreational Activities, Inc.*, 4 B.R. 36, 38–40 (Bankr.N. D.Ga.1980).

Bad faith is not defined in the Bankruptcy Code, but the cases provide substantially the same list of factors to be used in determining bad faith. The most extensive list appears in *In re Wentworth*, 83 B.R. 705 (Bankr.D.N.D.1988) and is reproduced in *In re Bryan supra*, and in *In re Village Green Realty Trust, supra*, which are both Massachusetts bankruptcy cases, as well as and in *Matter of Welwood Corp.*, 60 B.R. 319 (Bankr.M.D.Fla.1986).

1. The debtor has few or no unsecured creditors;

2. There has been a previous bankruptcy petition by the debtor or a related entity;

3. The pre-petition conduct of the debtor has been improper;

4. The petition effectively allows the debtor to evade court orders;

5. There are few debts to non-moving creditors;

6. The petition was filed on the eve of foreclosure;

7. The foreclosed property is the sole or major asset of the debtor;

8. The debtor has no ongoing business or employees;

9. There is no possibility of reorganization;

10. The debtor's income is not sufficient to operate;

11. There was no pressure from non-moving creditors;

12. Reorganization essentially involves the resolution of a two-party dispute;

13. A corporate debtor was formed and received title to its major assets immediately before the petition;

14. The debtor filed solely to create the automatic stay.

*Id.* at 707. *See also In re Little Creek Development Co.*, 779 F.2d 1068, 1072–73 (5th Cir.1986).

For an exhaustive listing of pre–1981 cases, see the appendix following *In re Victory Const. Co., Inc.*, 9 B.R. 549, 565–70 (1981).

This alleged debtor meets substantially all of the bad faith criteria. For example:

A) Tests 1 and 5: The newly formed corporation lists 214 combined creditors of the 29 trusts, of which more than half (120) are owed less than $500. Another 26 creditors are owed less than $1000 and only 20 creditors are owed more than $5000. That means that less than one unsecured creditor, on average, per trust is owed in excess of $5000!

B) Tests 2, 3 and 4: There were two attempts to file as trusts in Massachusetts. They were dismissed when they were filed as one case in the name of the trustee. In a second filing, after a motion to dismiss where the movant bank was in possession of the real estate of 15 trusts, the trusts were dismissed by agreement. At that point, the bank lost all interest in pursuing its motion against the remaining 14 trusts. Nevertheless, after a hearing, they were dismissed. The dismissals were stayed pending appeal. Subsequently, the present debtor corporation was organized in New Hampshire, the real estate from each of

the trusts that had been dismissed by agreement was transferred to this shell corporation along with the interests of the beneficiaries of the trusts on appeal, and a new corporate Chapter 11 filing was made in New Hampshire.

C) Tests 6 and 13: The corporation was organized two days before filing and one day before foreclosure.

D) Test 7: The only tangible asset of each trust was its parcel of real estate now transferred to the Assembled Properties, Inc., a somewhat arrogantly descriptive corporate name.

E) Test 8: Formerly, the employees were all those of Haven Realty Corp., d/b/a Heritage Associates, an associated entity that actually managed all of the day-to-day needs of the various properties.

F) Test 9: A stack of documents, several inches thick, was filed. It included a plan and disclosure statement that have not been reviewed which, in part, and are now the subject of a hearing in Massachusetts; however, the United States Trustee and others have referred to them as being without much substance. It appears that the plan provides no payments to unsecured creditors for at least a year and project a five year sell-off if the real estate market improves. Counsel referred to the plan as only the opening bid, Counsel for Bank of New England facetiously commented that anything can be a disclosure statement and plan, even a banana.

G) Test 10: Because of the number of trusts, a detailed analysis has yet to be made; however, given that it was agreed that the bank could remain as mortgagee-in-possession of the 15 properties that had been transferred to this corporation, it seems reasonable to assume that revenue was insufficient.

H) Test 11: No one spoke in favor of the alleged banana plan except the debtor. Everyone seemed opposed to it, including the United States Trustee who, generally, is inclined to give the debtor a chance. The creditors were apparently too small to even provide for a creditor's committee.

I) Test 12: In each trust, there appears to be only a dispute between the mortgagee and the debtor. As previously noted as to each trust, the creditor body was relatively insignificant with an average of less than one creditor per trust in excess of $5000.

J) Test 14: It seems clear that the purpose of this new entity's filing was to obtain the benefits of the automatic stay without the risk of individual liability of the trust beneficiaries. The purpose was not to reorganize a business, but to buy time in the hope that the real estate market would improve, thereby enabling the real estate to be sold off over the next several years at an enhanced value so that the investors might recoup on their investment.

This case must be, and is, dismissed for cause not only as part of the new debtor syndrome, but because it fails to meet the good faith criteria.